UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:25-cr-45-RDP-SGC |
| } | |
| **RICHARD RODREGEUS MORRIS, JR.,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendant's Motion to Compel Disclosure of Confidential Informant and Dismissal (Doc. # 14), as well as Defendant's Motion to Suppress Evidence and Motion to Dismiss. (Doc. # 16). In the Motions (Docs. # 14, 16), Defendant requests that the court compel the Government "to disclose the identity and location of the confidential informant" in this case (Doc. # 14 at 1), and "suppress all evidence seized from the Defendant's residence on or about January 8, 2025, as well as all fruits of the poisonous tree derived therefrom." (Doc. # 16 at 1). In addition, he moves to dismiss the indictment, arguing that "the Government cannot sustain its burden without the suppressed evidence." (*Id.* at 1-2).

Because the "no knock warrant" that authorized police to search his residence "was based on an unsigned affidavit," Defendant argues, there was a "fundamental defect" with the warrant that requires suppression of the evidence obtained. (*Id.* at 2). Relatedly, Defendant argues that "[g]iven that the affidavit was unsigned, the credibility and reliability of the [Confidential Informant, or "CI"] becomes even more central to the defense." (Doc. # 14 at 3). The Government opposes these requests, responding that the search warrant was valid because although unsigned, it was sworn under oath and should, in any event, be upheld under the good faith exception. (Doc.

# 21 at 5-9). The Government also contends that disclosing the CI's identity "is not required and could be dangerous," as Defendant has not met his burden under the Eleventh Circuit's three-part test for disclosing the identity of a CI. (*Id.* at 10-11 (citing *United States v. Johnson*, 702 F. App'x 815, 816 (11th Cir. 2017) (in turn citing *United States v. Flores*, 572 F.3d 1254, 1265 (11th Cir. 2009)))). The court first considers Defendant's arguments for suppressing the evidence obtained by the search warrant and then evaluates his arguments for disclosing the CI's identity.

## I.   Suppression of Evidence

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures" and instructs that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

Defendant is not entitled to suppression of the evidence obtained as a result of the warrant because the warrant satisfied the Fourth Amendment and, in any event, the good faith exception applies here.

The Supreme Court has found the words in the Fourth Amendment are "precise and clear." *Dalia v. United States*, 441 U.S. 238, 255 (1979) (quoting *Stanford v. Texas*, 379 U.S. 476, 481 (1965)). Therefore, the Eleventh Circuit has "interpreted them to require only three things. First, warrants must be issued by neutral, disinterested magistrates." *Id.* (citations omitted). "Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that 'the evidence sought will aid in a particular apprehension or conviction' for a particular offense." *Id.* (quoting *Warden v. Hayden*, 387 U.S. 294, 307 (1967)). "Finally, 'warrants must particularly describe the things to be seized,' as well as the place to be searched." *Id.* (quoting *Stanford*, 379

U.S. at 485) (cleaned up). Here, the Government has demonstrated that all three requirements are met.

### 1. Neutral and Disinterested Magistrate

Defendant does not dispute that the judicial officer who issued the warrant, Judge Fortune, acted as a neutral and disinterested magistrate. (*See* Docs. # 14, 16). The court finds the Government has established this element.

### 2. Demonstration of Probable Cause

"Sgt. Harding" (the one seeking the warrant) demonstrated to Judge Fortune that there was probable cause to believe that the evidence sought would aid in a conviction for the listed crimes, which were "Theft 1st (13A-8-3) and Drug Trafficking (13A-12-231)." (Doc. # 14-1 at 1). While "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, . . . the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *United States v. Leon*, 468 U.S. 897, 914 (1984). The Supreme Court has noted that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109 (1965). The "duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for concluding' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)) (cleaned up).

With this in mind, the "critical information" that must be included in a search warrant affidavit to establish probable cause is a statement of "facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched," *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (citation removed), "a connection between the

defendant and the residence to be searched and a link between the residence and any criminal activity," *id.* (citation omitted), and a demonstration of any informant's "veracity" and "basis of knowledge." *Id.* (quoting *Gates* 462 U.S. at 238). "The information in the affidavit must also be fresh." *Id.*

Harding established there was probable cause by demonstrating a link between Defendant and the address in question, by stating that Defendant is associated with the address in CLEAR, and by showing a connection between Defendant and the residence in a Homewood Police Department arrest report. (Doc. # 14-1 at 3). Harding then established a link between the residence and criminal activity by providing information to Judge Fortune about a firearm theft investigation, an interview with a CI that uncovered that Defendant had offered to sell firearms to the CI, surveillance conducted on Defendant's address where "what appeared to be a hand-to-hand transaction for narcotics" was observed (Doc. # 21 at 2), and a tapped phone call between the CI and Defendant talking about selling firearms and marijuana. (*Id.* at 2-3). Harding established enough facts to justify a conclusion that the evidence sought would probably be found at the premises. He began by detailing CI testimony about the presence of guns and marijuana at Defendant's address. (*Id.*). But, Harding did not stop there. He pointed out that this CI testimony was corroborated by a tapped phone call between the CI and Defendant. (*Id.*). The evidence sought included, among other listed items, "[a]ny and all firearms and any other weapons . . . [p]hotographs of co-conspirators . . . [a]ny and all narcotics or paraphernalia . . . [e]lectronics that would contain furtherance of the Crimes." (Doc. # 14-1 at 4). This evidence would reasonably aid in a conviction for theft of firearms as well as a conviction for drug trafficking.

Harding demonstrated the CI's veracity and the CI's basis of knowledge by explaining that the CI had described the stolen firearms with detail concerning scopes and accessories that would

4

not have been public knowledge and by detailing how the CI's recorded conversation with Defendant supported the CI's version of events. (*Id.* at 2-3). Finally, Harding's evidence was sufficiently "fresh" because the tapped phone call and surveillance witnessing the hand-to-hand drug transaction at the address were both conducted on January 8, 2025, which was the same day the search warrant was sought. (Doc. # 21 at 6). Indeed, the alleged firearm theft that instigated this investigation occurred on January 2, 2025 (Doc. # 14-1 at 2); so, any evidence obtained during the investigation of that theft would likely be fresh even six days later when the warrant was sought.

### 3. Particular Description

The warrant particularly described thirteen categories of things to be seized (*id.*) as well as the address to be searched. (*Id.* at 2-3). Defendant does not dispute this point. (*See* Docs. # 14, 16). This court finds the Government has established this element.

### 4. Sworn Under Oath

Not only does the search warrant satisfy each of the "only three things" that the Supreme Court requires for a valid search warrant, *Dalia*, 441 U.S. at 255, but it also was sworn under oath. As the Eleventh Circuit has explained, "[t]he Fourth Amendment does not require that the basis for probable cause be established in a written affidavit; it merely requires that the information provided [to] the issuing magistrate be supported by 'Oath or affirmation.'" *United States v. Donaldson*, 558 F. App'x 962, 967 n.3 (11th Cir. 2014) (quoting *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994) (in turn quoting U.S. Const. amend. IV)). Because Harding swore an oath in support of her written affidavit, the court concludes the warrant is supported by "Oath or affirmation" and there is no reason to consider the search warrant invalid under the Fourth Amendment.

Defendant has not provided any controlling (or on point) case law to the contrary. Although he cites out of circuit precedent (*see* Doc. # 16 at 3-4 (citing *United States v. Garey*, 329 F.3d 573, 578 (7th Cir. 2003), *United States v. Cazares-Olivas*, 515 F.3d 726, 729 (7th Cir. 2008))), these cases do not include the quotes he cites he attributes to them. (*See id.* at 3-5 (citing *Garey*, 329 F.3d 573 (case does not contain the quote), *United States v. Chulpayev*, 220 F. Supp. 3d 1292 (N.D. Ga. 2016) (case does not appear to exist), *United States v. Burston*, 159 F.3d 1328 (11th Cir. 2019) (case does not cite *Cazares-Olivas* as Defendant claims it does), *United States v. Martin*, 297 F.3d 1308 (11th Cir. 2002) (case does not contain the quote))), and a case that interprets another constitutional provision (*id.* at 5 (citing *United States v. Brown*, 996 F.3d 1171, 1179 (11th Cir. 2021)).

    **5.**    **Good Faith Exception**

Even if the search warrant were invalid (and, to be clear, it was not), the good faith exception to the exclusionary rule would apply. Under *United States v. Leon*, 468 U.S. 897 (1984), which created the exclusionary rule, evidence obtained as a result of an invalid search warrant can still be used if the law enforcement officer was acting in good faith, meaning that the officer is acting in reasonable reliance on a search warrant issued by a neutral and detached magistrate. *Id.* at 925-26. As the Eleventh Circuit explained in *United States v. Martin*, 297 F.3d at 1313, there are "four limited sets of circumstances" in which the good faith exception does not apply. Defendant argues that one of the sets of the circumstances exists here—namely, "where, depending upon the circumstances of the particular case, a warrant is so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Id.* But, as already discussed, the search warrant in this case is sufficiently particular about the place to be searched and the things to be seized. To the extent that

6

Defendant argues that the warrant is facially deficient because the affidavit lacked a signature, a panel of the Eleventh Circuit has considered and rejected this argument. *See United States v. Gordon*, 686 F. App'x 702, 704 (11th Cir. 2017) (holding that "even if the issuing magistrate judge failed to administer an oath or affirmation, the evidence was admissible because the detective acted in good faith and objectively reasonable reliance on the warrant").

## II.   Disclosure of CI's Identity

Defendant also requests that the court compel the Government to disclose the CI's identity. But, applying the three-part test in *Roviaro*, the court concludes that such disclosure is not warranted.

The Supreme Court in *Roviaro* set out a "balancing test, taking into account the particular circumstances of each case, the crime charged, possible defenses, and the potential significance of the informant's testimony." *United States v. Gutierrez*, 931 F.2d 1482, 1490 (11th Cir. 1991) (citing *Roviaro v. United States*, 353 U.S. 53, 59-61 (1957)). As noted in *Gutierrez*, "[s]ubsequent case law has focused the inquiry on three factors: [1] the extent of the informant's participation in the criminal activity, [2] the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and [3] the government's interest in nondisclosure." *Id.* (quoting *United States v. Parikh*, 858 F.2d 688, 696 (11th Cir. 1988)). The burden is on Defendant to show how the CI's identity would significantly aid him in establishing a defense. *Id.* at 1491.

Applying those three factors here, although the CI was directly involved in Defendant's criminal activity – the CI discussing the purchase of firearms with Defendant – the CI was not present at the search of the house, which uncovered a machine gun, a weapon that the CI had never been involved with.

7

Additionally, the relationship between Defendant's asserted defense and the probable testimony of the CI is tenuous and indirect. Defendant's asserted defense is that the affidavit underlying the search warrant was unsigned and therefore deficient, and that knowing the identity of the CI would allow him to "test the veracity of the information that formed the basis for the warrant." (Doc. # 14 at 3-4). Defendant also asserts that his defenses could also include "mistaken identity, entrapment, lack of knowledge and impeachment of Government witnesses." (*Id.* at 7). But, Defendant's argument ignores the facts that (1) the affidavit underlying the search warrant was sufficient, and (2) the affidavit did not solely regurgitate or rely on the CI's testimony. Rather, the CI's testimony provided a lead for police to listen to a tapped phone call and surveil Defendant's property. Those investigative steps independently corroborated the CI's testimony.

Defendant's caselaw citations do not buttress his argument. For example, Defendant cites *Franks v. Delaware*, 438 U.S. 145, 155-56 (1978) as supporting his "right to challenge the truthfulness of statements made in an affidavit supporting a warrant." (*Id.* at 4). This simply overstates the holding in *Franks*. Under *Franks*, there is "of course, a presumption of validity with respect to the affidavit supporting the search warrant." 438 U.S. at 171. However, *Franks* also holds that the limited circumstances in which an evidentiary hearing must be held to challenge such an affidavit are when a defendant "makes a *substantial* preliminary showing that a false statement *knowingly* and *intentionally*, or with *reckless disregard* for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155-56 (emphasis added). At most, Defendant has presented conclusory assertions about the likelihood that the affidavit was unreliable or untruthful because it was unsigned. (*See, e.g.*, Doc. # 14 at 2-7). In his reply, Defendant made additional conclusory assertions that the affidavit's summary of the CI's phone conversation with Defendant indicated

8

that there was a third party talking to the CI, and that "[t]his provides further reason why the CI MUST BE DISCLOSED." (Doc. # 22 at 2). It is not at all clear why this information supports Defendant's argument for disclosure of the CI's identity. Defendant also states that the warrant was issued "without any known corroborating evidence beyond the CI's claim" (Doc. # 22 at 3) (emphasis removed), but this is simply incorrect; before seeking the warrant, law enforcement listened to a tapped phone call and surveilled Defendant's property to obtain corroborating evidence of the CI's testimony.

Additionally, Defendant has not satisfied the *Franks* standard because he has not made a preliminary showing – much less a substantial one – that there were any false statements in the affidavit, or that such false statements were made knowingly, intentionally, or with reckless disregard for the truth. Finally, even if Defendant had established these elements (and, he has not), he has not shown that such false statements were *necessary* to Judge Fortune's finding of probable cause. Indeed, even if the CI's statements were completely redacted from the affidavit there was still testimony about the tapped phone call discussing the sale of firearms and marijuana, surveillance of Defendant's property showing what appeared to be a drug deal, and a link between Defendant and the property.

Finally, the Government has asserted a strong interest in nondisclosure, explaining that "Defendant Morris and the other individuals taken into custody the day of the search warrant are all alleged to be members of a group called the Central Park Murder Gang," and that "[g]iven the home had multiple firearms and the possible affiliation with a violent group, law enforcement and the government are concerned for the safety of anyone who has cooperated with investigations." (Doc. # 21 at 12). Defendant's counter-argument that "[a]ny general concerns about safety can be addressed through protective measures such as an in-camera review or protective orders," is off

the mark. That contention ignores the fact that Defendant's lawyers could share the CI's identity with him, or if Defendant at any point decides to represent himself pro se, he could ascertain the CI's identity.

## III. Conclusion

After careful review, the court determines that the affidavit, although unsigned, was sworn and therefore valid under the Fourth Amendment; the search warrant satisfied requirements of the Fourth Amendment; the good faith exception would apply even if the warrant were invalid; and Defendant has not satisfied his burden of showing that disclosure of the CI's identity is warranted. Because there is no reason to exclude the evidence obtained as a result of the valid search warrant, the court also denies Defendant's challenge to the indictment on this basis.

For these reasons, Defendant's Motions (Docs. # 14, 16) are **DENIED**.

**DONE** and **ORDERED** this May 1, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE